IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LEV OMELCHENKO,

       Plaintiff,

       v.

CITY OF ATLANTA,
LIEUTENANT DESMOND FLOYD,
in his individual capacity,
and
OFFICER CARL MILLER,
in his individual capacity,

       Defendants.

CIVIL CASE NO.:
1:23-cv-04041-VMC

## AMENDED COMPLAINT FOR DAMAGES

COMES NOW Lev Omelchenko, a Plaintiff in the above styled action and files this his Amended Complaint for Damages as of right pursuant to FRCP Rule 15 within 21 days of filing of a responsive pleading by Defendant.

This is a civil rights action under 42 U.S.C. § 1983, the First, Fourth and Fourteenth Amendments to the United States Constitution and Georgia law. Lev

1

Omelchenko ("the Plaintiff") alleges that he was illegally and unconstitutionally detained and arrested by Defendant Officers Carl Miller of the City of Atlanta Police Department, and Lieutenant Desmond Floyd, and maliciously prosecuted in violation of the Fourth Amendment of the United States Constitution and Georgia law. Plaintiff also alleges that he was arrested and prosecuted in retaliation for the exercise of his First Amendment rights, that his constitutional right to film was violated, and that Defendant City of Atlanta has an unconstitutional policy and practice of providing inadequate training to its officers which resulted in the false arrest and malicious prosecution that is the subject of this suit. Finally, Plaintiff alleges that a final policy maker within the City of Atlanta – Lieutenant Desmond Floyd - ordered the arrest of the Plaintiff and insisted on his prosecution as a result of Plaintiff's First Amendment protected activity.

## PARTIES

1.

Plaintiff Lev Omelchenko is a resident of the State of Georgia, United States citizen, and over the age of eighteen.

2

2.

Defendant Carl Miller is an Officer employed by the City of Atlanta Police Department. The headquarters of the City of Atlanta Police Department are located at 226 Peachtree St SW, Atlanta GA 30303 in Fulton County, Georgia. Defendant Carl Miller may be served at this address. At all times relevant to this lawsuit, Defendant Carl Miller acted under the color of law. Defendant Carl Miller is sued in his individual capacity.

3.

Defendant Desmond Floyd is a Lieutenant employed by the City of Atlanta Police Department. The headquarters of the City of Atlanta Police Department are located at 226 Peachtree St SW, Atlanta GA 30303 in Fulton County, Georgia. Defendant Desmond Floyd may be served at this address. At all times relevant to this lawsuit, Defendant Desmond Floyd acted under the color of law. Defendant Desmond Floyd is sued in his individual capacity.

4.

Defendant City of Atlanta ("the City") is a political subdivision of the State

of Georgia, which has the capacity to sue and be sued. The City can be served at:

55 Trinity Ave. SW, Atlanta GA 30303. At all times relevant to this lawsuit,

Defendant City of Atlanta acted under the color of law.

5.

All defendants reside in the Northern District of Georgia.

**JURISDICTION AND VENUE**

6.

This case presents a federal question and this Court has subject matter

jurisdiction under 28 U.S.C. § 1331.

7.

Under 28 U.S.C. §§ 1331 and 1343(a)(3)&(4), the Court can entertain an

action to redress a deprivation of rights guaranteed by the United States

Constitution, and the Court has jurisdiction under 28 U.S.C. § 1367 to hear an

action to redress a deprivation of rights guaranteed by the laws and the

Constitution of the State of Georgia.

8.

This Court has personal jurisdiction of the Defendants under 28 U.S.C. § 1367 and GA. CONST., art. I, § 1, ¶¶ V, XIII.

9.

Venue is proper in the Northern District of Georgia under 28 U.S.C. § 1391(b) because all actions complained of occurred within the boundaries of this judicial district and Defendants reside within this district.

10.

All of the parties herein are subject to the jurisdiction of this Court.

11.

Attorney's fees are authorized under 42 U.S.C. § 1988.

**FACTUAL ALLEGATIONS**

12.

On September 8, 2021 a small group of about 12 individuals held a peaceful protest in front of then City Councilwoman Natalyn Archibong's house. Plaintiff Lev Omelchenko was present at the site of this protest but did not participate in the

protest itself. Mr. Omelchenko was not chanting but was present in his role as a filmmaker to film the protest. Plaintiff Omelchenko worked as a freelance / independent documentary filmmaker. In the past he worked with More Perfect Union covering labor rights, as well as Al Jazeera. Mr. Omelchenko is currently a member of the NPPA (National Press Photographers Association).

13.

The protest in question which Mr. Omelchenko was filming was held to express the protesters' views regarding the proposed construction of a police training facility (also referred to as "Cop City") and City Council's vote related to this highly controversial political matter.

14.

The protesters were holding cardboard signs and chanting. All protesters made a conscious and deliberate effort to stand as close to the curb of the street as possible in order not to obstruct any traffic while at the same time also not stepping on the grass. This was done in order to diligently comply with the pedestrian in the roadway statute (OCGA Sec. 40-6-96) and in order not to trespass on anyone's property. Mr. Omelchenko - who was not participating in the protest in any way but

was standing near the protesters while filming - made the same diligent and deliberate efforts described above to comply with pedestrian in the roadway laws and refrain from trespassing.

15.

The street on which the protesters and Mr. Omelchenko were located is a residential neighborhood street and has no sidewalks, crosswalks, traffic lights or lanes. The street also has no shoulder and is not a two lane street.

16.

At all times relevant to this complaint protesters and Mr. Omelchenko were standing or striding as near as practicable to an outside edge of the roadway.

17.

Approximately twenty minutes after the protest started police arrived on the scene. At this time the police did not take any action to interrupt the protest. After approximately another twenty minutes had elapsed the police announced to the protesters that they were in violation of the noise ordinance.

18.

While the protesters were using two small megaphones the noise produced

by chanting and using the megaphones was below the level specified by the noise ordinance and there was nothing in protesters' conduct that would lead officers to believe that anyone was violating the noise ordinance.

19.

Despite the fact that protesters were not violating any laws the protesters briefly paused their chanting after the police announcement and immediately ceased the operation of the megaphones for the remainder of the protest in order to comply with the police order. As mentioned above Mr. Omelchenko was not chanting, using a megaphone or otherwise participating in the protest in any way.

20.

Soon thereafter, however, the officers stated that protesters were obstructing traffic and had to leave even though all protesters were as close to the curb as possible and several cars were able to pass them with no problem whatsoever. In order to further alleviate any concerns that police may have the protesters started to walk while chanting as opposed to standing in place.

21.

After a few minutes of walking back and forth the protesters decided to

leave the area due to police harassment, intimidation and threats of arrest. Around this time Defendant Floyd gave an order to arrest all protesters.

22.

While the protesters were walking away and were clearly in the process of leaving the area various officers conducted arrests for the crime of Pedestrian in the Roadway and arrested all protesters.

23.

Despite the fact that Mr. Omelchenko was not participating in the protest, was not chanting, but was instead filming the entire time, and despite the fact that Mr. Omelchenko clearly informed the officers of same – Mr. Omelchenko was nevertheless arrested by Officer Carl Miller. He was charged with the offense of Pedestrian in the Roadway (OCGA 40-6-96). Mr. Omelchenko was arrested because officers believed that he shared the views of the protesters.

24.

None of the protesters were charged with violation of a noise ordinance.

25.

During the protest other individuals (presumably neighborhood residents)

were walking in the same street where the protest was taking place but were not arrested or harassed by the police because they were not engaged in the first amendment activity that the protesters were engaged in.

26.

At some point during the protest the daughter of Councilwoman Archibong came outside and spoke with the protesters. At no point did the daughter or the Councilwoman ask the protesters to leave.

27.

Upon his arrest Plaintiff was transported to City of Atlanta Detention Center. The prosecution of Plaintiff's case was transferred from Atlanta Municipal Court to the State Court of Fulton County. The Fulton County Solicitor's Office never filed an accusation in Plaintiff's case and therefore no criminal prosecution against this Plaintiff is currently pending. Accordingly – based on this information and belief – and although the case was never formally dismissed - Plaintiff believes that Fulton County Solicitor's Office has decided not to prosecute his case.

**COUNT I**
**42 U.S.C. § 1983: Unlawful Seizure in violation of the Fourth Amendment**
**(As to Defendants Miller, and Floyd)**

28.

Paragraphs 1 through 27 are hereby re-alleged as if fully pled herein.

29.

The conduct of Defendants Miller and Floyd in causing and procuring the

arrest and detention of Plaintiff without arguable probable cause constituted an

unreasonable seizure of his person in violation of the Fourth Amendment.

30.

The law being clearly established in 2021 that an officer of the state cannot

cause someone to be arrested and prosecuted without arguable probable cause,

Defendants are not entitled to qualified immunity.

**COUNT II**
**42 U.S.C. § 1983: Malicious Prosecution in violation of the Fourth**
**Amendment**
**(As to Defendants Miller, and Floyd)**

31.

Paragraphs 1 through 27 are hereby re-alleged as if fully pled herein.

32.

Defendants Miller and Floyd caused a criminal prosecution to be initiated against Plaintiff for the offense of pedestrian in the roadway.

33.

Defendant Miller not only caused the prosecution to be initiated, and arrest to be executed, but he caused the prosecution to continue based on their arrest warrant affidavit and police report such that Mr. Omelchenko had to endure a criminal case which ultimately terminated in his favor. Defendant Floyd is liable for said prosecution due to his ordering Defendant Miller to initiate the arrest and prosecution.

34.

Defendants knew that there was no probable cause to support the charges against Plaintiff, but they persisted in initiating, participating in, and assisting with that prosecution despite the complete lack of probable cause.

35.

Said prosecution was based upon statements by Defendants that were either knowingly false or made with reckless disregard for the truth.

36.

Accordingly, said prosecution was carried on maliciously and without probable cause, and it was ultimately terminated in Plaintiff's favor.

37.

The law being clearly established in 2021 that an officer of the state cannot knowingly make false statements in order to cause someone to be prosecuted for an offense that is not supported by probable cause, Defendants are not entitled to qualified immunity.

**COUNT III**
**Municipal Liability**
**(As to Defendant City of Atlanta)**

38.

Paragraphs 1 through 27 are hereby re-alleged as if fully pled herein.

39.

The City is liable under the Monell doctrine due to its failure to provide proper training and because there was a decision by a final policy maker to arrest Mr. Omelchenko or to conduct arrests in cases such as Mr. Omelchenko's.

40.

The City has a long history of not adequately training its officers when it comes to protecting and respecting citizens' First Amendment rights which includes violating citizens' rights to film the police that ultimately resulted in a contempt order against the City in 2015.

41.

The City also routinely arrests protesters under the pretext of violating pedestrian in the roadway laws with numerous instances of such arrests occurring during 2020 protests, a mass arrest on January 6, 2021 that is the subject of a pending lawsuit before this Court (Baker v. City of Atlanta et al. 1:21-cv-04186-MLB) where 19 protesters were corralled and arrested for pedestrian in the roadway within minutes of starting to protest, and another mass arrest in May of 2022 when a number of Stop Cop City protesters were arrested in Inman Park and

also charged with pedestrian in the roadway. <u>Baker</u> case – much like the present

case - likewise involved an order given by a high ranking officer to arrest all

protesters on the scene. This leads to a conclusion that there is an official policy or

directive by final policy maker(s) within the City of Atlanta to engage in practice

of arresting protesters under the pretext of violating pedestrian in the roadway laws

and the City – if not deliberately promoting this policy – is at the very least

deliberately indifferent to it.

42.

An example of an arrest of a protester under the pretext of violating

pedestrian in the roadway laws occurring during 2020 protests referred to above is

a case pending in this Court styled <u>Schilling v. Doherty</u>, Case No.: 1:22-cv-03772-

MLB. In this case a high-ranking officer Lieutenant Kevin Knapp who was in

charge of the City of Atlanta police unit at the scene singled out several individuals

from a crowd of protesters by pointing them out to other APD officers, identifying

them as the ones that should be arrested by saying: "This one has to go, this one

has to go…" while pointing at individual protesters to be arrested. There was no

indication or explanation on behalf of Lieutenant Knapp as to why those

15

individuals should be arrested. Some time after this identification for the purpose of the arrest Donovan Schilling was arrested under the pretext of an alleged violation of pedestrian in the roadway statute which allegedly occurred after the above mentioned identification and thus could not possibly have formed a basis for Lieutenant Knapp's singling out Mr. Schilling for arrest. Schilling was arrested by Lieutenant Knapp and officer Michael Doherty. Schilling sued alleging – inter alia – first amendment retaliation and the case is currently pending in this Court. Lieutenant Knapp has since been promoted to Captain.

There are numerous other instances of similar pretextual arrests of protesters for pedestrian in the roadway violations from 2020 protest period that further discovery will reveal.

43.

A high ranking officer in the above mentioned Baker case was Lieutenant Gary Harper. Harper has since been promoted to Major. A first amendment retaliation claim has likewise been brought in Baker case.

44.

The above referenced Inman Park mass arrest from May of 2022 occurred on

May 14, 2022 in Inman Park – a public park. This mass arrest of approximately 15 individuals followed a different "Stop Cop City" Protest and was a carefully executed action where only those protesters who were deemed more vocal / more dedicated to the cause were targeted out of a much larger group of protesters. Those protesters were ultimately arrested in a public park where they could not have possibly been violating pedestrian in the roadway laws. Indeed all but one of the May 14, 2022 arrestees had their charges dismissed, and the sole remaining one is currently awaiting an accusation in the State Court of Fulton County but has not been accused to date. Many of the arrested protesters sent *ante litem* notices to the City of Atlanta where they indicated their intention to file lawsuits and assert – among other claims – a claim of first amendment retaliation.

45.

Related to the May 14, 2022 arrests and on the same day were the arrests of Melanie Silverstein, Ahley Dixon and Ryan Michael Seal. Dixon and Silverstein were arrested on a public sidewalk while walking home from the protest and charged with pedestrian in the roadway. Dixon and Silverstein were singled out by Major Jeff Cantin because one of them was carrying a "Stop Cop City" sign. Dixon

17

and Silverstein were arrested by Major Cantin who upon information and belief was assisted by other officers in arresting the two. Dixon's and Silverstein's charges were likewise dismissed.

46.

Ryan Michael Seal was a reporter who was arrested in Inman Park on May 14, 2022 on pedestrian in the roadway charges and was transported to the City of Atlanta Detention Center. There Mr. Seal was released without charges. However, his reporter's notebook was confiscated and never returned. Upon information and belief Mr. Seal was arrested because he was deemed to be a part of the "Stop Cop City" movement and because it was expected that his notebook would yield valuable intelligence about the movement. In other words Mr. Seal was arrested because of his First Amendment protected activities and in retaliation for those activities.

47.

The complaint of Michael Watchulonis in Watchulonis v. City of Atlanta 1:23-cv-2204-TCB - yet another case pending in this Court – alleges First Amendment violations surrounding the detention of Mr. Watchulonis – a reporter –

where Mr. Watchulonis was interrogated by above mentioned Major Jeff Cantin and a GBI agent Mike Carter, threatened with arrest if he does not delete his footage, and then released without charges. Said complaint contains a long list of First Amendment violations of the right to film described therein which are hereby incorporated by reference in order to save space and cut down on the verbosity of the present complaint.

48.

The above described numerous recent instances of pretextual arrests of protesters on pedestrian in the roadway charges, as well as more broad examples of First Amendment violations committed by members of APD and with full knowledge of Defendant City of Atlanta (as described in more detail in Watchulonis complaint) show deliberate indifference by the City as to the need to properly train officers on First Amendment protections generally and as to illegality of using pedestrian in the roadway charges as a pretext to retaliate and / or attempt to suppress protesters' speech. Had officers been properly trained on the first amendment protections as it comes to protests the constitutional violations alleged in the present case would not have occurred. The involvement of the high

ranking officers in the above mentioned violations (Lieutenant, Captain and Major) and the fact that said officers are routinely promoted subsequent to those violations show that the City has full knowledge (let alone constructive knowledge) of those violations and is not only deliberately indifferent to them but is in fact actively promoting them. This knowledge is further demonstrated by the fact that the Baker mass arrest was discussed at a City Council meeting soon after it happened – negating any possible claim of ignorance on behalf of the City.

49.

Plaintiff alleges that Defendant Floyd acted as final policy maker for the City of Atlanta in the incident at issue in this case because his order to arrest protesters for pedestrian in the roadway under the circumstances at hand was not reviewable in any way – and therefore Defendant Floyd was delegated final policy making authority when it came to the decision of using a particular criminal charge to suppress the protest at hand. Defendant Floyd's decision was not an individualized case by case decision of reviewing each individual's conduct separately – but rather a categorical policy decision to arrest all individuals that were part of this protest – regardless of what they were actually doing and

regardless (as in case of Lev Omelchenko) of whether they were even protesting.

50.

Officer Miller also acted pursuant to direct instructions from a final City of Atlanta policy maker Defendant Floyd.

51.

By virtue of issuing an order to a large group of officers to "arrest all members of the group" and by virtue of his rank Defendant Floyd acted as a final policy maker for the City of Atlanta in the incident at issue in this case.

52.

The City of Atlanta Police Department Standard Operating Procedure APD.SOP.2011 specifically Section 4.1.1 provides:

All employees shall be prohibited from interfering with a citizen's right to record police activity by photographic, video, or audio means.  This prohibition is in effect as long as the recording by the citizen does not physically interfere with the performance of the officer's duties.

While the City of Atlanta Police Department does have this SOP on the books it clearly does not respect it which is demonstrated by this case as well as by a complaint recently filed in this Court in Watchulonis v. City of Atlanta 1:23-cv-2204-TCB and the long list of violations of the right to film described therein

21

which are hereby incorporated by reference.

**COUNT IV**
**O.C.G.A. § 51-7-40: Malicious Prosecution**
**(As to Defendants Miller, and Floyd)**

53.

Paragraphs 1 through 27 are hereby re-alleged as if fully pled herein.

54.

Officers Miller and Floyd initiated a criminal prosecution against Mr. Omelchenko for a misdemeanor offense, and they knew or should have known that no arguable probable cause existed to believe that Mr. Omelchenko had violated any laws or committed any crime recognized by law.

55.

Officers Miller, and Floyd initiated and maintained the arrest and prosecution of Mr. Omelchenko with malice, as interpreted under Georgia law.

56.

This criminal prosecution terminated favorably for Mr. Omelchenko.

57.

As a result of the arrest and prosecution, Mr. Omelchenko has suffered

physical, emotional, mental and financial injury, entitling him to recover nominal, compensatory and punitive damages against Defendant Officers Miller, and Floyd for the loss of his rights under this claim, in an amount to be determined by the enlightened conscience of the jury.

## COUNT V
## 42 U.S.C. § 1983: First Amendment Retaliation in violation of the First Amendment
## (As to Defendants Miller, and Floyd)

58.

Paragraphs 1 through 27 are hereby re-alleged as if fully pled herein.

59.

Defendants deliberately initiated and or caused arrest and prosecution against this Plaintiff because Plaintiff exercised his rights to free speech and was perceived to be a part of a protest. Mr. Omelchenko was targeted for arrest because he was seen as associated with protesters and their views. Plaintiff Omelchenko would not have been arrested but for his exercise of his First amendment rights.

60.

Defendants' actions were meant to punish the Plaintiff for his exercise of his First Amendment rights and to prevent him from further filming by abruptly

cutting him off and arresting him.

61.

The intentional actions of Defendants in falsely accusing Plaintiff of a misdemeanor crime interfered with Plaintiff's right of freedom of speech and expression in violation of the First Amendment to the US Constitution.

62.

The law being clearly established in 2021 that an officer of the state cannot make false statements or make an arrest to retaliate against a person for their exercise of freedom of speech, Defendants are not entitled to qualified immunity.

63.

Mr. Omelchenko alleges that he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech, expression or filming had not been arrested. Indeed there were other individuals walking on the same street during the protest that were not arrested because they were not engaged in speech.

64.

Mr. Omelchenko alleges that no person has been arrested for being a

Pedestrian in the Roadway when they were not engaged in the type of protected

First Amendment activity Mr. Omelchenko was engaged in.

65.

Had Mr. Omelchenko not been perceived as protesting or had he not been

filming Officers Miller, and Floyd would not have arrested him. This is evidenced

by the common knowledge that officers typically exercise their discretion not to

arrest in cases of jaywalking even when probable cause is present. Mr.

Omelchenko asks that the Court take judicial notice of same or allow Mr.

Omelchenko to gather evidence of such typical exercise of discretion during

discovery. Mr. Omelchenko alleges that Officer Miller had no arguable probable

cause to arrest him for any crime and nothing in this complaint should be construed

as an admission or allegation that arguable probable cause existed for any crime.

66.

Retaliatory motive is further evidenced by the fact that Defendant Floyd

ordered the arrest of all members of the group without regard for what any

individual member was doing.

**COUNT VI**
**42 U.S.C. § 1983: Violation of the First Amendment Right to film in violation of the First Amendment**
**(As to Defendants Miller, and Floyd)**

67.

Paragraphs 1 through 27 are hereby re-alleged as if fully pled herein.

68.

Defendants Miller and Floyd arrested Mr. Omelchenko because he was

exercising his First Amendment right to film.

69.

The law being clearly established in 2021 that an individual has a First

Amendment protected right to film the police and to be free from police

interference with this right, Defendants are not entitled to qualified immunity.

**DAMAGES**

70.

Paragraphs 1 through 69 are hereby re-alleged as if fully pled herein.

71.

As a direct and proximate result of the above described conduct of

26

Defendants, Plaintiff was unreasonably and unlawfully arrested and prosecuted without probable cause and as a retaliation for exercising his First Amendment rights, was imprisoned and deprived of his liberty, was subjected to physical restraint, confinement, and mental suffering and emotional distress that is expected to continue into the future, and was forced to incur other economic and non-economic losses for which Defendants are liable to Plaintiff in an amount to be proven at trial and determined by the enlightened conscience of fair and impartial jurors.

72.

The aforementioned misconduct of Defendants rose to such a level of bad faith, willfulness, and reckless disregard as to authorize the imposition of punitive damages against each one of them.

73.

Plaintiff is also entitled to recover reasonable attorney's fees and expenses of litigation pursuant to 28 U.S.C. §1988.

**WHEREFORE**, Plaintiff demands the following:

27

a) That this action be tried by a jury;

b) That judgment be entered in favor of Plaintiff and against each Defendant for nominal, special, compensatory and punitive damages for each violation of the Plaintiff's constitutional rights in an amount to be determined by the enlightened conscience of fair and impartial jurors;

c) That Plaintiff be awarded attorney's fees and reasonable expenses of litigation;

e) That all costs of this action be taxed against Defendants; and

f) That the Court award any additional or alternative relief as may be deemed appropriate under the circumstances.

Respectfully submitted this 29th day of December 2023.

/s/Drago Cepar, Jr.
Drago Cepar, Jr.
Georgia Bar No. 142362

1900 The Exchange, Suite 490
Atlanta, Georgia 30339
Phone: 770-940-3233
Fax: 770-874-2987
dcepar@gmail.com